REVISED AUGUST 14, 2008

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

July 16, 2008

Charles R. Fulbruge III
Clerk

No. 07-51071

EDWARD CARMONA

Plaintiff - Appellant

v.

SOUTHWEST AIRLINES COMPANY

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas

Before JONES, Chief Judge, and WIENER and CLEMENT, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant Edward Carmona sued his employer of fourteen years, Defendant-Appellee Southwest Airlines Company ("Southwest"), alleging sex discrimination, disability discrimination, and failure to accommodate. The district court dismissed Carmona's suit for lack of subject matter jurisdiction, declining to reach the merits of his claims. As we disagree with the district court's conclusion that it did not have jurisdiction to hear Carmona's suit, we reverse and remand for consideration of the substance of Carmona's discrimination allegations.

## I. FACTS AND PROCEEDINGS

Carmona worked as a flight attendant for Southwest from 1991 to 2005. The terms and conditions of Carmona's employment were governed by a collective bargaining agreement (the "CBA") between Southwest and the Transport Workers Union of America, AFL-CIO, Local No. 556 (the "Union"). The CBA sets forth rules for leaves of absence, medical and sick leave, attendance, discipline and termination, and grievance procedures. Under the CBA's attendance provisions, any employee who exceeds twelve attendance "points" within a rolling sixteen-month period is subject to termination.

From the beginning of his tenure with Southwest, Carmona suffered from psoriasis, a skin condition, and from psoriatic arthritis. These illnesses caused him to take leave under the Family Medical Leave Act (the "FMLA") roughly two or three times each month for three or four days at a time. In 2005, Carmona took additional absences "for illness," which Southwest did not excuse under the FMLA. For these unexcused absences, Carmona accumulated points pursuant to Southwest's attendance policy, and was disciplined by Southwest as a result: When Carmona received his seventh attendance point on May 1, 2005, Southwest issued him a "letter of counseling"; when Carmona accumulated his ninth point on May 10, 2005, Southwest issued him a written warning.

On June 22, 2005, Carmona injured his thumb at home. He called Carolyn Jernigan, a Houston Inflight Assistant Base Manager with Southwest, to report that he was going to the hospital and would be unable to fly that day. Carmona also requested a medical leave of absence. As mandated by the CBA, Jernigan instructed him to send a written request to Southwest together with supporting documentation from the hospital.

As a result of his thumb injury, Carmona missed four work days (June 22, 23, 25, and 26, 2005). These absences moved his absence point total above twelve points, the maximum allowable under the CBA. After returning to work

on June 27, 2005, Carmona faxed a doctor's note to Southwest, which indicated that he was cleared to return to work as of June 25, 2005; but because Carmona had already used a doctor's note for an earlier absence that quarter, provisions of the CBA prevented this note from excusing his absences between June 22 and June 26, inclusive.

By June 26, 2005, Carmona had exceeded the maximum of twelve points permitted under the CBA, making him subject to immediate termination from employment. As was Southwest's practice, however, its Houston Inflight Base Manager, Kevin Clark, held a fact-finding meeting with Carmona, another of Carmona's supervisors, and a representative of the Union to review Carmona's point total. Clark determined that Carmona had actually accumulated even more points than the twelve originally calculated. The following month, Southwest terminated Carmona's employment for excessive absenteeism.

Days later, Carmona followed the grievance procedures in the CBA and provisions in the Railway Labor Act (the "RLA") by appealing his termination as being in violation of the CBA. At the final level of review, Carmona's grievance was heard by a four-member panel of the Board of Adjustment, which, in March 2006, upheld Carmona's termination.

In September 2005, Carmona filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC"), alleging sex and disability discrimination. The EEOC dismissed Carmona's claims, finding no evidence of sex discrimination and concluding that Carmona was not disabled within the meaning of the Americans with Disabilities Act (the "ADA").

The EEOC issued Carmona a "right to sue" letter, after which he filed the instant action, alleging sex discrimination under Title VII of the Civil Rights Act ("Title VII"), disability discrimination and failure to accommodate under the

ADA, and retaliation in violation of the FMLA.[1] Specifically, Carmona asserted that Southwest: (1) assessed him attendance points and denied him medical leave in situations under which similarly situated female flight attendants were not assessed points or were granted medical leave, and that similarly situated female employees have not been terminated for excessive absenteeism even after accumulating twelve points; and (2) discriminated against him because of his psoriasis and psoriatic arthritis and refused him medical accommodation when it assessed him points for his illness-related absences prior to his thumb injury.

In September 2006, Southwest filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6), contending that the court lacked subject matter jurisdiction because Carmona's claims were precluded by the RLA.[2] In November 2006, the district court denied the motion without prejudice to filing a motion for summary judgment. In May 2007, Southwest filed a motion for summary judgment, reasserting its contention that Carmona's claims were precluded by the RLA and further asserting that, if they were not precluded, Carmona's claims were substantively without merit. The district court granted Southwest's motion for summary judgment after concluding that Carmona's claims were precluded by the RLA and dismissed Carmona's action for lack of subject matter jurisdiction. Consequently, the court did not reach the merits of Carmona's claims. Carmona timely filed a notice of appeal.

---

[1] On appeal, Carmona has abandoned his FMLA retaliation claim.

[2] As Carmona's claims are based on federal statutes, the district court correctly characterized Southwest's challenge to the court's jurisdiction as questioning whether the RLA precludes, rather than preempts, Carmona's suit. See Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 259 n.6 (1994) (citing Atchison, Topeka & Sante Fe Ry. Co. v. Buell, 480 U.S. 557, 559 (1987)).

## II. STANDARD OF REVIEW

We review a district court's preclusion-based grant of summary judgment de novo.[3] "Because the district court dismissed the complaint before reaching the merits, we confine our independent review to the jurisdictional issue."[4]

## III. ANALYSIS

Carmona has waived his right to appeal the district court's dismissal of his ADA claim of failure to accommodate.[5] As discussed below, however, because Carmona's claims alleging (1) Title VII gender discrimination and (2) ADA disability discrimination cannot be resolved through an "interpretation" of the CBA, these claims are not precluded by the RLA.

## A. Applicable Law

The RLA classifies CBA-related disputes as either "major" or "minor."[6] In 1972, the Supreme Court held that minor disputes are exclusively within the jurisdiction of RLA adjustment boards.[7] Six years later, the Court re-emphasized that "Congress considered it essential to keep these so-called 'minor'

---

[3] See Taggart v. Trans World Airlines, Inc., 40 F.3d 269, 272 (8th Cir. 1994).

[4] Saridakis v. United Airlines, 166 F.3d 1272, 1276 (9th Cir. 1999) (citing Vestron, Inc. v. Home Box Office, Inc., 839 F.2d 1380, 1381 (9th Cir. 1988)).

[5] Carmona's arguments against RLA preclusion are largely confined to his sex and disability discrimination claims. Carmona did not discuss failure to accommodate in any of his filings in the district court or in the first of his two briefs filed on appeal. He only raises the argument that his claim of failure to accommodate is not precluded by the RLA in his reply brief, after Southwest argued in its brief that Carmona had waived this argument. As we do not generally consider issues raised for the first time in a reply brief, we hold that Carmona has waived his right to appeal the district court's dismissal of his failure-to-accommodate claim. See, e.g., United States v. Prince, 868 F.2d 1379, 1386 (5th Cir. 1989).

[6] Norris, 512 U.S. at 252-53.

[7] Andrews v. Louisville & Nashville R.R. Co., 406 U.S. 320, 322 (1972) ("Thus, the notion that the grievance and arbitration procedures provided for minor disputes in the Railway Labor Act are optional, to be availed of as the employee or the carrier chooses, was never good history and is no longer good law.").

disputes within the Adjustment Board and out of the courts."[8]  The Court defined minor disputes as disputes growing "'out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.'"[9]  The "distinguishing feature" of a minor dispute "is that the dispute may be conclusively resolved by interpreting the existing [collective bargaining] agreement."[10]  To state that a claim can be "'conclusively resolved'" by interpreting a CBA "is another way of saying that the dispute does not involve rights that exist independent of the CBA."[11]

Minor disputes "resist a rigid definition."[12]  If Carmona's claims can be resolved through an interpretation of the CBA, i.e., if the rights at issue do not exist independent of the CBA, his suit would qualify as a minor dispute under the RLA, and would be precluded from judicial review.

B. Merits

The district court concluded that Carmona's allegations that Southwest did not assess negative attendance points under similar circumstances when flight attendants (1) were female, (2) were not disabled, or (3) had not requested intermittent FMLA leave, required interpretation of the CBA.  As such, ruled the court, it qualified as a minor dispute and was precluded by the RLA.

On appeal, Southwest echoes the district court's logic, insisting that Carmona's claims are "inextricably intertwined" with the CBA.  According to Southwest, interpretation of the CBA's attendance policy, procedures for

---

[8] Union Pac. R.R. Co. v. Sheehan, 439 U.S. 89, 94 (1978).

[9] Norris, 512 U.S. at 252-53 (quoting 45 U.S.C. § 151a) (emphasis added).

[10] Consol. Rail Corp. v. Ry. Labor Executives' Ass'n, 491 U.S. 299, 305 (1989); see also Anderson v. Am. Airlines, Inc., 2 F.3d 590, 595 (5th Cir. 1993) (citing id.).

[11] Norris, 512 U.S. at 265.

[12] Saridakis v. United Airlines, 166 F.3d 1272, 1276 (9th Cir. 1999).

obtaining medical and sick leave, and discipline and termination procedures is required to evaluate whether (1) Carmona has established a prima facie case, (2) Southwest proffered a non-discriminatory reason for firing Carmona, and (3) Southwest's stated rationale for terminating his employment was a pretext for discrimination. Southwest asserts that Carmona's suit is a minor dispute because it can be resolved only through interpretation of the CBA.

Carmona, in contrast, insists that the district court erred in ruling that his claims require interpretation of the CBA and thus should be classified as a minor dispute under the RLA. Carmona acknowledges that it is necessary to refer to the CBA, particularly Southwest's attendance rules, method for calculating attendance points, and procedures for obtaining medical and sick leave, to resolve his claims; but he asserts that his claims create no dispute over the meaning of any provision of the CBA. Stated differently, he insists that no interpretation of the CBA is required, only adjudication of the factual question whether Southwest was motivated by sex or his alleged disability (or both) in terminating his employment. According to Carmona, Southwest is attempting to "hide behind" RLA preclusion by equating his "straightforward" references to the CBA's terms with CBA interpretation.

As a preliminary matter before addressing whether Carmona's claims require CBA interpretation, we note that a CBA is not merely a simple, written contract. Although Carmona attempts to narrow the scope of how a CBA is defined to bolster his argument that his suit does not require CBA interpretation, a CBA encompasses more than its explicit, written provisions. The Supreme Court has held that a CBA includes not only written terms, but a broad range of implied, unwritten terms "arising from 'practice, usage and custom.'"[13] A CBA may encompass, for example, "a norm that the parties have

---

[13] Norris, 512 U.S. at 264 n.10 (quoting Conrail, 491 U.S. at 311-12).

created but have omitted from the CBA's explicit language"[14] or a working "'condition [that] is satisfactorily tolerable to both sides'" and so "'is often omitted from the agreement . . . .'"[15] According to the Court, a CBA is "more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate."[16] The CBA "covers the whole employment relationship."[17] Inasmuch as a CBA incorporates by reference more than just the content of its black-letter terminology, both disputes over explicit written provisions and disputes over implicit, non-written provisions of the agreement may qualify as minor and be precluded by the RLA.[18]

Even so, for the federal courts to have subject matter jurisdiction over claims like Carmona's "do[es] not require that the CBA be irrelevant to the dispute; either party may still use the CBA to support the credibility of its claims."[19] Southwest's contention that Carmona's claims necessitate CBA interpretation fails to recognize the distinction between reference to the CBA and reliance on it. As noted, the "distinguishing feature" of a minor dispute under the RLA is that "the dispute may be conclusively resolved by interpreting" the CBA.[20]

As provisions of the CBA are relevant to, but not dispositive of, the resolution of Carmona's claims, his claims do not constitute a minor dispute

---

[14] Id. at 264.

[15] Id. at 264 n.10 (quoting Detroit & Toledo Shore Line R.R. Co. v. United Transp. Union, 396 U.S. 142, 154-55 (1969)).

[16] United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 578 (1960).

[17] Id. at 579.

[18] Norris, 512 U.S. at 264-65.

[19] Jones v. Roadway Express, Inc., 931 F.2d 1086, 1090 (5th Cir. 1991).

[20] Consol. Rail Corp. v. Ry. Labor Executives' Ass'n, 491 U.S. 299, 305 (1989) (emphasis added).

under the RLA.  Even though a court would have to refer to the CBA to consider fully each of the alleged acts of disparate treatment, there is no disagreement about how to interpret these provisions of the CBA that detail Southwest's procedures for assessing attendance, leave, discipline, and termination. Carmona's factual allegations that unexcused absences by female flight attendants went unpunished, that remarks of his supervisors regarding male employees were discriminatory, and that his chronic illnesses were the real reason he was fired, do not bring the meaning of any CBA provisions into dispute.  He alleges that CBA procedures were applied in a discriminatory manner, not that CBA procedures were fundamentally discriminatory.  Thus, consideration of the CBA as applied to Title VII and the ADA — not interpretation of the CBA itself — is what is required to resolve Carmona's claims.[21]

Southwest cites Reece v. Houston Lighting & Power Co., in which we held that a state claim of race discrimination was preempted by § 301 of the Labor Management Relations Act, as support for the proposition that Carmona's references to the CBA necessitate CBA interpretation.[22]  In reaching the decision in Reece, however, we noted that the plaintiff's claim "turn[ed] on questions of promotion, seniority, and assignment to training programs, all of which are provided for in the CBA," and that the plaintiff directly challenged his

---

[21] See Brown v. Ill. Cent. R.R. Co., 254 F.3d 654, 668 (7th Cir. 2001) ("A claim brought under an independent federal statute is precluded by the RLA only if it can be dispositively resolved through an interpretation of a CBA.  This occurs only when a provision of the collective bargaining agreement is the subject of the dispute or the dispute is substantially dependent upon an analysis of the terms of a collective bargaining agreement.  Therefore, an employer cannot ensure the preclusion of a plaintiff's claim merely by asserting certain CBA-based defenses to what is essentially a non-CBA-based claim, or by arguing that the action challenged by the plaintiff is arguably justified by the terms of a CBA.  Nor will a claim be precluded merely because certain provisions of the CBA must be examined and weighed as a relevant but non-dispositive factor in deciding a claim or a defense." (internal quotations and citations omitted)).

[22] 79 F.3d 485, 487-88 (5th Cir. 1996).

employer's rights under the CBA, all of which required interpretation of the CBA.[23] Southwest has not identified any CBA provision in dispute or in need of interpretation to adjudicate Carmona's claims, and neither have we. Carmona's claims do not turn on the CBA, so Reece is inapposite to Southwest's contention that the instant matter requires CBA interpretation.

In addition, the realization that Carmona is seeking to enforce his federal statutory rights under Title VII and the ADA, not his contractual rights embodied in the CBA, bolsters the contention that Carmona's claims do not require CBA interpretation. Other circuits have held that claims grounded in federal statutory rights are generally not precluded by the RLA. The Ninth Circuit, for example, has held that anti-discrimination claims brought under Title VII and the ADA are independent of the CBA, so they do not qualify as minor disputes.[24] Similarly, the First and Eighth circuits have held that ADA rights are independent of the RLA and are therefore outside the ambit of disputes classified as minor.[25] Even though Carmona's action involves statutory rights that exist independent of the CBA, we do not cite these decisions of other

---

[23] Id. at 487.

[24] Saridakis v. United Airlines, 166 F.3d 1272, 1277 (9th Cir. 1999) (holding that ADA claim is independent of CBA and thus minor dispute); Felt v. Atchison, Topeka & Sante Fe Ry. Co., 60 F.3d 1416, 1419-20 (9th Cir. 1995) (holding that Title VII claim is independent of CBA and thus minor dispute).

[25] Ralph v. Lucent Techs., Inc., 135 F.3d 166, 171 (1st Cir. 1998) (holding that "the present controversy concerns the plaintiff's rights under state and federal statutes which exist independently of the collective bargaining agreement and do not require interpretation of that agreement"); Benson v. Nw. Airlines, Inc., 62 F.3d 1108, 1115 (8th Cir. 1995) (holding that plaintiff's ADA claim is not preempted by RLA because plaintiff "seeks to enforce a federal statutory right, not a contractual right embodied by the collective bargaining agreement"); cf. Brown, 254 F.3d at 667-68 ("It remains true as a general rule that the RLA will not bar a plaintiff from bringing a claim under an independent federal statute in court (because such claims are generally independent of the CBA and will be adjudicated under non-CBA standards). However, this rule no longer applies if the federal claim asserted by the plaintiff depends for its resolution on the interpretation of a CBA. Such claims are not 'independent' of the CBA regardless of their source, and are therefore precluded by the RLA.").

circuits to suggest that the source of the rights asserted in a union member's claims determines absolutely whether his action is precluded by the RLA. We are persuaded, however, that the fact that Carmona's claims allege Title VII and ADA violations, as opposed to violations of the CBA itself, further evidences that the instant suit does not require CBA interpretation.

We recognize that compelling federal policies encourage the arbitration, not the litigation, of CBA-related disputes between employers and their employees. "Congress' purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes."[26] Notwithstanding this preference for arbitration, we are convinced that Carmona's claims do not require interpretation of the CBA, only reference to it. As Carmona's suit does not advance claims that constitute a minor dispute, it is not precluded from judicial review by the RLA.

## IV. CONCLUSION

We hold that because Carmona's allegations of Title VII sex discrimination and ADA disability discrimination do not require interpretation of the CBA, they do not constitute a minor dispute precluded by the RLA. Consequently, the district court erred in holding that it did not have subject matter jurisdiction to hear Carmona's claims. We REVERSE and REMAND to the district court for consideration of the merits of Carmona's claims.

---

[26] Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252 (1994) (citing Atchison, Topeka & Sante Fe Ry. Co. v. Buell, 480 U.S. 557, 562 (1987)).