# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 30, 2009

Charles R. Fulbruge III
Clerk

No. 07-61014

JOHN LICHTERMAN; VINCE MARASCUILO; MARSHA MARASCUILO

Plaintiffs-Appellants

v.

PICKWICK PINES MARINA INC; TISHOMINGO COUNTY
DEVELOPMENT FOUNDATION; TENNESSEE VALLEY AUTHORITY

Defendants-Appellees

Appeal from the United States District Court
Northern District of Mississippi
USDC No. 1:07-CV-256

Before WIENER, GARZA and DeMOSS, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellants John Lichterman ("Appellants") et al. appeal the district court's order denying in part and granting in part a preliminary injunction against Defendant-Appellee Tennessee Valley Authority ("TVA") and Appellees Pickwick Pines Marina, Inc. ("Pickwick Pines") and Tishomingo County Development Foundation ("TCDF"). At issue are two "buffer zones" surrounding a 31-acre parcel of land leased by the TVA to TCDF and developed

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

by Pickwick Pines. Appellants)) homeowners whose property looks across the cove at the north end of the Pickwick property)) sought to enjoin TCDF and Pickwick Pines from cutting trees within a 50-foot buffer zone and a 100-foot buffer zone that had been mandated by the TVA to be "undisturbed" in Environmental Assessments conducted in 2000 and 2006. Appellants argue that the district court abused its discretion in denying the injunction as to the 50-foot buffer and in remanding to the TVA for a full investigation and evaluation of the 100-foot buffer without requiring a full Environmental Assessment.

I

In 2000, TVA leased approximately 31 acres of land to TCDF. TCDF proposed the construction of a convention center hotel, a marina, cabin sites, and covered boat slips. Pursuant to NEPA,[1] TVA issued a series of findings as to the

---

[1] NEPA requires federal agencies to analyze the environmental impact of their proposals and actions. O'Reilly v. U.S. Army Corps of Engineers, 477 F.3d 225, 228 (5th Cir. 2008). NEPA does not mandate particular substantive results; rather, it imposes a series of procedural requirements upon federal agencies. Id. A central requirement is that federal agencies must include in every proposal for federal action a detailed statement on the environmental impact of the proposed action ("EIS"). 42 U.S.C. § 4332(2)(C). Under NEPA and binding regulations issued by the Council on Environmental Quality ("CEQ") to implement NEPA, there are three levels of review that may apply in determining the environmental impact of a given agency action. At the highest level of review, an agency must produce a full EIS for major federal actions which have potentially significant environmental impacts; at the lowest level–categorical exclusions–the agency issues a determination that the proposed action does not have significant environmental impact and no further analysis is needed. The intermediate level of review, Environmental Assessments ("EAs"), is the level implicated in this case. An EA is a "concise public document" that sets out analysis for determining whether to prepare an EIS. 40 C.F.R. § 1508.9(a). If it is found that no EIS is required, the agency must issue a Finding of No Significant Impact ("FONSI") along with the EA. The FONSI must briefly state "the reasons why the proposed agency action will not have a significant impact on the human environment." O'Reilly, 477 F.3d at 228 (citing 40 C.F.R. §§ 1501.4(e), 1508.13). Consistent with the goals of NEPA, an EA and FONSI may create enforceable conditions that an agency must take to mitigate adverse environmental effects. See 40 C.F.R. § 1505.3 ("Mitigation. . . and other conditions established in the environmental impact statement or during [the agency's] review shall be implemented by the lead agency. . ."); See also Spiller v. White, 352 F.3d 235, 241 (5th Cir. 2003) (endorsing incorporation of mitigation measures into FONSI). The appropriate mitigation measures can be imposed as enforceable permit conditions. 46 FED. REG. 18026, 18036 (1981). Thus, NEPA is essentially an "action-forcing" statute that requires agencies to take a "hard look" at the environmental impacts of their proposed actions. See Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 373-74 (1989).

environmental impact of TCDF's proposal. In December of 2000, TVA issued a Final Environmental Assessment ("2000 EA") and a Finding of No Significant Impact ("2000 FONSI") that contained several restrictive conditions. Those conditions, which were memorialized in an agreement between TVA and TCDF, included:

- a requirement that TCDF, through deed restrictions, maintain a 50-foot undisturbed buffer to be managed as a shoreline management zone;

- a requirement that undisturbed forested buffers at least 50-feet wide be maintained and enhanced around the site with 100-foot minimum width along the cove at the north end.

In 2001, TVA issued a Final Environmental Impact Statement ("2001 FEIS") that stated in part, "Under the proposed action, environmental safeguards include maintenance of shoreline and woodland buffers around the perimeter of the property. . ." In 2005, TCDF leased the area to Pickwick Pines for the construction and operation of a marina. Pickwick Pines applied to TVA for a permit to construct and operate a marina at the property. Building on the 2000 EA, TVA issued a Final Environmental Assessment ("2006 EA") in 2006 that evaluated the environmental effects of Pickwick Pines's proposal. TVA also produced a second FONSI ("2006 FONSI") and issued Pickwick Pines a section 26a permit to build and operate the marina.

The 2006 EA included several conditions to reduce potential adverse environmental effects, including the following special condition:

> The applicant would be required, through deed restrictions, to maintain a 50-foot undisturbed buffer to be managed as a shoreline management zone. Undisturbed forested buffers at least 50 feet wide would be maintained and enhanced around the site with 100-foot minimum width along the cove at the north end. Minimum openings are acceptable for water access on the south end.

The section 26a permit issued to Pickwick Pines also contained a special condition regarding a 50-foot undisturbed buffer and a 100-foot undisturbed buffer; the language of the condition was identical to the one contained in the 2006 EA. The section 26a permit also contained an attachment which described a paved trail to be constructed for golf cart and foot traffic. The trail is described in the permit:

> A twelve (12) foot wide paved surface shall be provided. The lake side of the trail shall have a four (4) foot crushed stone shoulder leading into a rip rap section that extends below water level. The rip rap protection will be approximately 1800 feet along the shore. The protection shall extend to an approximate elevation of 410. The shore side of the trail shall have retaining walls and erosion features as necessary.

In June 2007, Pickwick Pines submitted detailed site development plans for approval to TVA. In early July, TVA Representative Stephen Williams began review of the plans. After examining the special conditions contained in the 2006 EA and in TCDF's easement, Williams concluded that the condition requiring maintenance of a "50-foot undisturbed buffer" as a shoreline management zone was inconsistent with the condition requiring "maintenance and enhancement" of a woodland buffer at least 50 feet wide; Williams also concluded that it was impossible to have an "undisturbed" buffer around a commercial marina project. He proposed changing the special condition language to require a managed buffer area.

In July 2007, Appellants, who are homeowners across the cove from the property at issue, observed the cutting of trees in what they believed were the buffer zones. The homeowners contacted TVA with their concerns, and TVA agreed to cease work and tree removal in the buffer zones. At that time, TVA decided to conduct a NEPA review of whether modifying the buffer language would have significant environmental effects.

The review conducted by TVA is described in an affidavit submitted by TVA to the district court. The affidavit describes the following:

- An email from Williams to TVA staff member Rebecca Tolene detailing his concerns about the "undisturbed buffer" language;

- Email communications between Williams and Jon C. Riley, a landscape architect in charge of Visual Assessments, where Riley states that he felt the modification of the language did not contradict the 2006 EA, and that the project's visual impact would be not substantially changed by modifying the mitigation condition;

- A conference call between TVA staff determining that the matter should be formally reviewed under TVA's NEPA regulations;

- A determination by Kenneth Parr, Senior Specialist on TVA's NEPA Services staff, that use of riprap[2] on the shoreline would provide an equal or greater level of erosion control and aquatic ecological resource protection as an "undisturbed buffer";

- A determination by Dr. Charles P. Nicholson, NEPA program manager, that the difference to wildlife between a 50-foot undisturbed buffer and a managed buffer was minimal.

TVA memorialized the findings and review of the project in a memo on August 15, 2007 ("August 15 Memorandum"), which recognized that the "broad language of the environmental commitments" did not reflect the necessities of the development of the marina. The August 15 Memorandum also discussed the vegetation that was already removed from the shoreline buffers, stating that such removal was anticipated in the 2000 EA as necessary to obtain access to the shoreline. The August 15 Memorandum concluded that the proposed changes would not alter TVA's previous EAs and FONSIs and would have negligible environmental impact, and accordingly modified the 50-foot buffer zone to include the cart path running along the edge of the east bank.

---

[2] Riprap is rock used to armor shorelines against water and erosion.

Appellants claim that they did not learn of the existence of the August 15 Memorandum until the end of October. Once they were informed that TVA had approved the modification of the buffer language, they petitioned the district court to enjoin TVA from violating the conditions contained in the 2000 and 2006 EAs. The district court conducted a hearing in November. Subsequently, the court issued a memorandum opinion denying a preliminary injunction as to the 50-foot buffer, holding that TVA's review of modification of the buffer language was not arbitrary and capricious; and granting a preliminary injunction as to the 100-foot buffer, holding that there was no evidence that any investigation, review, survey or analysis was conducted as to the 100-foot buffer or the removal of trees on the northern bank. Lichterman v. Pickwick Pines Marina, Inc., 2007 WL 4287586 (N.D. Miss. 2007)(unpublished). The district court remanded to the TVA for further investigation and evaluation of the 100-foot buffer. Appellants appeal the denial of the injunction as to the 50-foot buffer, and the remand to TVA.[3]

II

We review a district court's denial or grant of a preliminary injunction for abuse of discretion. Women's Med. Ctr. of Nw. Houston v. Bell, 248 F.3d 411, 418-19 (5th Cir. 2001). In order to prevail on a motion for a preliminary injunction, plaintiffs must establish that (1) there is a substantial likelihood that they will prevail on the merits; (2) there is a substantial threat they will suffer irreparable injury if the preliminary injunction is denied; (3) that the threatened injury to the plaintiff outweighs the threatened injury to the party to be enjoined; and (4) granting the preliminary injunction will not disservice the

---

[3] Though Pickwick Pines and Tishomingo County Development Foundation are named defendants along with TVA, as private entities they are not capable of violating NEPA. "[T]he requirements of NEPA do not reach private acts only 'major Federal actions.'" Save the Bay, Inc. v. U.S. Corps of Engineers, 610 F.2d 322, 326 (5th Cir. 1980). We thus address the remainder of the opinion to TVA's actions alone.

public interest. Sierra Club v. FDIC, 992 F.2d 545, 551 (5th Cir. 1993). Each of the four elements required to support a preliminary injunction presents a mixed question of fact and law. Findings of fact are reviewed for clear error while legal conclusions are subject to de novo review. Women's Med. Ctr., 248 F.3d at 419. Only under "extraordinary circumstances" do we reverse the denial of a preliminary injunction. White v. Carlucci, 862 F.2d 1209, 1211 (5th Cir. 1989).

Where, as here, the subject of appeal is a district court's review of agency action, we apply the same standard of review as the district court and evaluate whether the agency action is "arbitrary and capricious." Sabine River Auth. v. United States Dep't of Interior, 951 F.2d 669, 678 (5th Cir. 1992). Under this deferential standard of review, we may not substitute our judgment for that of the agency, but "but must studiously review the record to ensure that the agency has arrived at a reasoned judgment based on a consideration and application of the relevant factors." Id.; See also Kleppe v. Sierra Club, 427 U.S. 390, 410 (1976) (holding that role of court in reviewing agency action under NEPA is to ensure agency has taken a "hard look" at environmental consequences; the court cannot "interject itself within the area of discretion of the executive as to the choice of the action to be taken.")(internal citations omitted).

III

Four issues are implicated on this appeal. First, we must decide whether Appellants have standing to obtain a preliminary injunction. Second, Appellants argue that the district court abused its discretion in finding that Appellants had not shown a substantial likelihood of prevailing on the merits. Third, Appellants allege that the district court abused its discretion in not enjoining violations of other mitigating conditions. Finally, Appellants challenge the district court's remand on the issue of the 100-foot buffer back to TVA, arguing that the court should have ordered a full Environmental Assessment.

A

TVA argues that Appellants lack standing to seek preliminary injunctive relief as to the 50-foot buffer zone. In order to show standing, a plaintiff must demonstrate: (1) an "injury in fact") an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) likelihood that the injury will be redressed by a decision in plaintiff's favor. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

The district court found that Appellants had standing based on the fact that they share a cove with the defendants, and thus "established a geographical nexus and a concrete and particularized injury in fact that is actual and imminent"; the court also found that the injury was traceable to Appellees' action of cutting trees in the cove within the 50-foot buffer. Lichterman, 2007 WL 4287586 at *4. TVA contends because all the trees in the cove were removed prior to November 30, 2007 (when the district court hearing was held), there is no evidence in the record of any actual injury to the Plaintiffs due to the cutting of trees in the 50-foot buffer after November 2007. This district court did not address this point in its denial of the preliminary injunction, and it is difficult to ascertain from the record before us whether TVA's assertion is true. However, though the removal of the trees may affect Appellants' ability to obtain a preliminary injunction, it does not harm their case from the perspective of standing. Under Fifth Circuit precedent, defects in the preparation of an Environmental Impact Statement may give rise to a procedural injury that supports standing, provided the plaintiff can show a geographical nexus to the site of the challenged project. See Sabine River Auth. v. U.S. Dep't of Interior, 951 F.2d 669, 674 (5th Cir. 1992) (holding procedural injury implicit in failure to prepare Environmental Impact Statement sufficient to furnish standing). The district court found such a geographical nexus here, as Appellants share a cove with the Pickwick Pines Marina. The district court thus did not abuse its

8

discretion in holding that Appellants adequately alleged a redressable injury in fact fairly traceable to the Appellees.[4]

B

The district court found that Appellants had not shown a substantial likelihood that they would prevail on the merits of the issue of the 50-foot buffer, and thus had not satisfied the first element required to obtain a preliminary injunction. We must decide whether the district court abused its discretion in so holding.

Appellants make two arguments with respect to TVA's review of the 50-foot buffer: (1) the review was a NEPA-violative "after the fact" rationalization of an activity (the cutting of the trees within the 50-foot buffer) that had already occurred; and (2) the August 15 memorandum was "arbitrary and capricious." The district court did not address the first of these arguments; however, we may affirm the district court's judgment on any grounds supported by the record. *Sobranes Recovery Pool I, LLC v. Todd & Hughes Const. Corp.*, 509 F.3d 216, 221 (5th Cir. 2007). Because we find infra that the district court did not err in holding TVA's review not to be arbitrary and capricious, we decline to address Appellant's first argument that the review was "after the fact."

Appellants argue that TVA's re-assessment of the 50-foot buffer as memorialized in the August 15 Memorandum was arbitrary and capricious, and

---

[4] The fact of tree removal may support an argument that the issue at hand is moot, as a court cannot enjoin an activity that has already occurred. See Harris v. City of Houston, 151 F.3d 186, 189 (5th Cir. 1998) ("a request for injunctive relief generally becomes moot upon the happening of the event sought to be enjoined."). However, the record is unclear as to whether all of the tree-cutting within the 50-foot buffer zone has actually occurred. After the November 30 hearing, the district court denied the Appellants' motion to enjoin any further activity in the 50-foot buffer zone pending appeal of the denial of the preliminary injunction, crediting TVA's assertion at the November 30 hearing that there were no more trees to be cut in the 50-foot buffer. Appellants maintain that there are still trees within the disputed buffer that are subject to clearing by Pickwick Pines. However, because we find that Appellants did not satisfy their burden under the preliminary injunction standard of showing a substantial likelihood that they would prevail on the merits, we do not attempt to further address the factual contradictions as to which trees remain in the 50-foot buffer.

that the district court abused its discretion in finding that TVA's "hard look" at the 50-foot buffer was sufficient under NEPA. Appellants allege that TVA's evaluation was inadequate because: (1) the analysis only took place over a month; (2) the August 15 Memorandum does not contain enough scientific analysis to justify the "elimination" of the buffer requirement; (3) the August 15 Memorandum does not address why the conditions which gave rise to the necessity of the buffer in the 2000 and 2006 EAs are no longer present.

The district court ordered TVA to produce affidavits describing the procedures that were used to produce the findings in the August 15 Memorandum. TVA supplied several affidavits from various TVA employees detailing the process. The district court found based on the affidavits submitted by TVA and its review of the email communications among TVA's own specialists (described in Part I, supra) that TVA had conducted an adequate review in finding that its proposed new mitigation condition, the shoreline stabilization measures, and the inland buffer did not have any greater environmental impact than the undisturbed buffer.

The district court did not abuse its discretion in finding that Appellants did not meet their burden of showing a substantial likelihood that TVA had acted arbitrarily and capriciously. Appellants' argument about the brevity of TVA's assessment is unavailing; as Appellees point out, TVA had already studied the environmental effects of the plans submitted by Pickwick Pines and the supplemental assessment was for the sole purpose of deciding whether an alternative mitigation condition would suffice.

Moreover, various TVA staff experts reviewed the question of whether a modification of the buffer zone language would have a significant environmental impact, providing opinions on the questions of the effect on the 100-foot buffer, whether the proposed modification was in conflict with the 2006 EA, whether the proposed modification would continue to provide erosion control and aquatic

ecological resource protection, and whether there would be any additional visual impact. An agency is entitled to utilize its own experts in conducting "hard look" review, and a reviewing court will not substitute its judgment for those experts. "An agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 378 (1989). The affidavits establish that TVA assessed the impact of the proposed actions upon protection of hardwood trees, the protection of foraging blue herons, the avoidance of sedimentation and increased water temperature, any potential adverse visual impact, and the alternative of moving the paved cart path. Careful review of the record, and the deferential standard of review we apply to the district court's crediting of the agency's decision-making, support Appellee's position on this issue.[5]

C

Appellants also argue that the district court erred in failing to enjoin the violation of other mitigating conditions contained in the 2000 and 2006 EAs, including: protection of the existing tree cover on steep shoreline slopes, minimum openings for water access on the south end of the property, height limitation on roofs of structures built on the property, and land-based structures and amenities limited to construction to the interior of the property. Appellants claim that they requested preliminary injunctive relief for these conditions from

---

[5] Having found that Plaintiffs had not shown a substantial likelihood of prevailing on the merits, the district court did not address any of the other elements required for a preliminary injunction; however, we note here that even if Appellants were to prevail on the first prong of the preliminary injunction test, they would likely not be able to show irreparable injury given the analysis in Part III(A). As the district court held in denying Appellants' motion to stay pending appeal, because most of the trees in the disputed zone have been removed and because any further grading was not irreparable, the only relief remaining to Appellants is monetary damages subsequent to future litigation.

the district court, but that the district court did not address them, ruling only on the 50-foot and 100-foot buffers.

While Appellants did pray for "issuance of a preliminary injunction enforcing the conditions contained in the 2000 []EA and 2006 []EA" before the district court, the substance of their petition for a preliminary injunction dealt only with the 50-foot and 100-foot buffer zones. The additional conditions discussed in their brief are raised for the first time on appeal and were not addressed by the district court. We may not consider issues raised for the first time on appeal. See Carmona v. Sw. Airlines Co., 536 F.3d 344, 347 n.5 (5th Cir. 2008). This issue is thus waived.

D

The district court granted Appellants' preliminary injunction as to the 100-foot buffer, finding no evidence that TVA took the required "hard look" at the environmental impact of cutting trees in the 100-foot buffer zone. The court enjoined TVA from any further action in the 100-foot buffer until "such time as the Court can evaluate the findings, assessments and investigations of TVA." Lichterman, 2007 WL 4287586 at *7. Appellants argue that the district court erred in remanding the issue to TVA without directing TVA to conduct a full Environmental Assessment addressing the consequences of action within the 100-foot buffer. Appellants contend that a remand to TVA without specific instructions fails to afford them sufficient protection, and urge this Court to remand to the district court to require TVA to conduct a new EA and place the burden on TVA to demonstrate that "its review of the 100-foot buffer requirement was free of the taint of having approved destruction of the buffer before conducting any environmental review of the consequences of its conduct."

As authority, Appellants cite only to a Ninth Circuit case in which the court directed the district court to require a federal agency to conduct a new EA "under circumstances that ensure an objective evaluation free of the previous

taint" of a NEPA-violative review.  Metcalf v. Daley, 214 F.3d 1135, 1146 (9th Cir. 2000).  However, the law in this Circuit is clear that "[a]s a general rule, when an agency decision is not sustainable on the basis of the administrative record, then 'the matter should be remanded to [the agency] for further consideration.'"  O'Reilly v. United States Army Corps of Eng'rs, 477 F.3d 225, 238-39 (5th Cir. 2007).  Only rarely is a remand to the agency not the appropriate remedy.  Id.  The appropriate relief depends on the findings made by the district court, id.; here, the district court clearly intends to assess any "findings, assessments and investigations" provided by TVA before taking further action.  If the district court finds at that time that action in the 100-foot buffer may have significant additional impact, then it may order the agency to conduct a full EA. However, any such order at this point in the proceedings is premature.

For the foregoing reasons, we AFFIRM the district court's denial of a preliminary injunction as to the 50-foot buffer, and AFFIRM the district court's grant of a preliminary injunction  as to the 100-foot buffer and remand to TVA for further evaluation.