# United States Court of Appeals for the Fifth Circuit

———————

No. 24-20136

———————

United States Court of Appeals
Fifth Circuit

**FILED**

December 11, 2025

Lyle W. Cayce
Clerk

Anna Palova,

*Plaintiff—Appellant*,

*versus*

United Airlines, Incorporated,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-3451

———————————————————————

ON PETITION FOR REHEARING EN BANC

Before Graves, Engelhardt, and Oldham, *Circuit Judges*.
James E. Graves, Jr., *Circuit Judge*:

Treating the petition for rehearing en banc as a petition for panel rehearing (5th Cir. R. 35 I.O.P.), the petition for panel rehearing is DENIED. Because no member of the panel or judge in regular active service requested that the court be polled on rehearing en banc (Fed. R. App. P. 35 and 5th Cir. R. 35), the petition for rehearing en banc is DENIED. The opinion issued June 4, 2025 is withdrawn by the panel and the following is substituted in its place.

No. 24-20136

Appellant Anna Palova claims that United Airlines ("United") unlawfully terminated her on the basis of her age, in violation of the federal Age Discrimination in Employment Act ("ADEA") and the Texas Commission on Human Rights Act ("TCHRA").  United contends that Palova violated her collective bargaining agreement by manipulating flight assignments to benefit her and her colleagues.  The district court concluded that the Railway Labor Act ("RLA"), which divests federal courts of jurisdiction over certain employer-employee disputes, applied to Palova's claims, and granted summary judgment in United's favor.  Because the Railway Labor Act does not preclude or preempt[1] Palova's age discrimination claims from being heard in a federal forum, we VACATE the district court's order and REMAND for further proceedings consistent with this opinion.

## I.

Anna Palova worked as a Houston-based flight attendant for United from 1992 until February 2020.[2]  She maintained "a perfect attendance and performance record" over this near thirty-year career.  Despite this, United terminated Palova upon determining that she committed infractions linked to "parking," a scheduling tactic related to the flight attendant industry.

Parking results from the fact that an airline uses a scheduling system to efficiently distribute attendants across all of its flight offerings.  United accomplishes this by assigning a group of flights, known as a "line," to attendants based on seniority.  After lines are distributed, attendants are allowed to trade with each other and/or forfeit unwanted trips into an open

---

[1] The RLA, if applicable, has a preclusive effect on federal claims and a preemptive effect on state law claims.  *See generally Hawaiian Airlines v. Norris*, 512 U.S. 246, 259 n.6 (1994) (describing "RLA preclusion of a cause of action arising out of a federal statute" and "RLA pre-emption of a cause of action arising out of state law").

[2] Continental Airlines, Palova's original employer, merged with United in 2010.

pool for others to take. Parking occurs when an attendant places a flight onto another attendant's schedule to facilitate that flight's eventual transfer. Attendants who possess a parked flight—that is, one they have no intent of servicing—often receive some kind of compensation in exchange for a desirable slot.

The joint collective bargaining agreement ("JCBA") that governs United flight attendants' labor relations forbids parking. On March 22, 2019, a United executive issued an "Inflight Leadership Update" reminding all flight attendants that the airline had "zero tolerance" for parking and would "fully investigate [any instances] and take appropriate action, up to and including discharge." The following day, March 23, the executive officers of United's flight attendant union issued a letter stating that "management has been left with no alternative but to investigate these [parking] concerns."

The airline's Corporate Security Department then "developed an algorithm to analyze flight trading data and determine [which flight attendants] had engaged in problematic trades." According to United, this algorithm identified 28 flight attendants across three hubs. Palova was one of the 28. On February 17, 2020, Palova received a letter directing her to attend an investigatory meeting scheduled for February 20. United found Palova's explanations unconvincing, and concluded she engaged in parking in violation of the JCBA. She was terminated on February 28, 2020.

Palova has a different explanation for her firing. She theorizes that her old age made her an optimal target for termination as United cut costs to offset COVID-related profit losses. Palova also alleges that the only three Houston-based attendants fired for parking were "all women in their late fifties or early sixties who had worked at the airline for decades." And Palova avers that United's investigation was a sham: she notes that the airline's algorithm gave substantial weight to an attendant's seniority, and asserts that

the key piece of evidence used against her—a spreadsheet that detailed her alleged parking maneuvers—was "illegible and in small print" and presented to her "less than an hour" before the interview.

Palova sued United in the Southern District of Texas on October 20, 2021. She originally alleged three claims: age discrimination in violation of the ADEA, age discrimination in violation of the TCHRA, and breach of contract. She later filed an Amended Complaint that contained only the ADEA and TCHRA claims—though in her facts section, Palova maintained that she had not parked at all. After discovery, United moved for summary judgment on two grounds: (1) the Railway Labor Act ("RLA") precluded Palova's ADEA claim and preempted her TCHRA claim, and (2) her discrimination claims were unsupported by the evidentiary record.

On March 5, 2024, the district court granted United's motion, finding that summary judgment was warranted due to the RLA's preemptive and preclusive effect. It specifically reasoned that, under the *McDonnell-Douglas* burden-shifting standard, the burden would shift to United to provide a "legitimate, nondiscriminatory reason for [her] termination," and United would "undoubtably rely on the JCBA as its legitimate, nondiscriminatory reason for [Palova's] termination." This position would require the district court to "determine if Plaintiff actually engaged in Parking, which is not within the Court's jurisdiction to do." Palova timely appealed.

## II.

The district court's order, a complete grant of summary judgment in United's favor, creates finality under 28 U.S.C. § 1291. The core of this appeal—whether the RLA precludes or preempts Palova's allegations—resolves subject-matter jurisdiction, as the RLA "divests federal courts of jurisdiction over minor disputes" between carriers and employees. *Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, 31 F.4th 337, 340 (5th

Cir. 2022). As for the applicable standard of review, a grant of summary judgment is reviewed "de novo, applying the same legal standards the district court applied to determine whether summary judgment was appropriate." *Am. Intern. Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 259-60 (5th Cir. 2003).

## III.

The Railway Labor Act, 45 U.S.C. § 151 *et seq.*, governs labor relations in the airline and railway industries. Disputes arising from collective bargaining agreements ("CBAs") in RLA industries are classified as either "major" or "minor." The classifications "do not necessarily refer to important and unimportant disputes, or significant and insignificant issues; rather, the terms refer to the bargaining context in which a dispute arises." *Int'l Bhd. of Teamsters, Loc. 19 v. Sw. Airlines Co.*, 875 F.2d 1129, 1133 (5th Cir. 1989) (citation omitted).[3]

Minor disputes involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." *Trainmen v. Chicago R. & I.R. Co.*, 353 U.S. 30, 33 (1957). This court employs the "arguable basis" test to determine whether a dispute is considered "minor" for RLA purposes. *Sw. Airlines Pilots Ass'n v. Sw. Airlines Co.*, 120 F.4th 474, 483 (5th Cir. 2024). "Under that test, a dispute is minor if the carrier has at least an arguable basis for its conduct in the 'express and implied' terms of the parties' collective bargaining agreement." *Id.* (quoting *Bhd. of Ry. Carmen v. Atchison, Topeka & Santa Fe Ry. Co.*, 894 F.2d 1463, 1468 (5th Cir.

---

[3] "[M]ajor disputes are those 'over the formation of collective agreements or efforts to secure them . . . They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.'" *Union Pac. R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 72 n.1 (2009) (quoting *Elgin, J. & E.R. Co. v. Burley*, 325 U.S. 711, 723 (1945)).

1990)).  Otherwise stated, the touchstone "of a minor dispute 'is that the dispute may be conclusively resolved by interpreting the existing [collective bargaining] agreement.'" *Carmona v. Sw. Airlines Co.*, 536 F.3d 344, 348 (5th Cir. 2008) (original bracketing) (quoting *Consol. Rail Corp. v. Ry. Lab. Executives' Ass'n*, 491 U.S. 299, 305 (1989)).

*Carmona*, though not on all fours with the present dispute, is persuasive.  The case involved a Southwest Airlines flight attendant who was afflicted with psoriasis and psoriatic arthritis.  *Carmona*, 536 F.3d at 345. Those conditions, along with a thumb injury and other illnesses, forced Carmona to take unexcused work leave; he eventually exceeded the maximum number of excused absences permitted under his CBA.  *Id.* at 345–46.  This "excessive absenteeism" made Carmona eligible for "immediate termination," and Southwest fired him after a fact-finding meeting.  *Id.* at 346.

After exhausting administrative remedies, Carmona sued Southwest in federal court, alleging that the airline assessed him attendance points "in situations under which similarly situated female flight attendants were not assessed points."  *Id.*  The district court concluded that because Carmona's discrimination allegations established pretext "showing his own points [were] incorrectly calculated under the CBA," the bargaining agreement formed "the foundation of his pretext argument" and necessitated RLA preemption.  No. A-06-CA-641-SS, 2007 WL 9702434, at *6 (W.D. Tex. July 30, 2007), *rev'd and remanded*, 536 F.3d 344 (5th Cir. 2008).

This court unanimously reversed the district court. *Carmona*, 536 F.3d 344.  It concluded that Carmona's claims "allege[d] that CBA procedures were *applied* in a discriminatory manner, not that CBA procedures were fundamentally discriminatory."  *Id.* at 349 (emphasis original).  Put differently, the CBA's provisions were "relevant to, but *not*

dispositive of, the resolution of Carmona's claims," and accordingly, the litigation did not present "a minor dispute under the RLA." *Id.* (emphasis original).

Palova's legal predicament is similar to that of Carmona's. The causes of action in her operative complaint, a federal ADEA claim and a state TCHRA claim, allege a straightforward theory: United fired her and two other older Houston-based flight attendants for parking, when younger, similarly-situated flight attendants who committed the same offense were not terminated. While United and Palova disagree as to whether she parked, resolving that question is not "dispositive" to her ADEA and TCHRA claims. *Id.* Assuming *arguendo* that Palova did park, a factfinder would still have to resolve whether United applied its *consequence* for parking—termination—in a nondiscriminatory manner.

It is also significant, as *Carmona* recognized, that Palova seeks to enforce her "statutory rights" rather than "contractual rights embodied in the CBA."[4] *Id.* at 350. "[T]he RLA's mechanism for resolving minor disputes does not pre-empt causes of action to enforce rights that are independent of the CBA." *Hawaiian Airlines*, 512 U.S. at 256. And here, Palova asserts—and United does not dispute—that Palova's "right to be free from age-related discrimination exists independent of the JCBA."

United alleges that *Carmona* is distinguishable because the attendant "did not dispute that he violated the terms of his CBA (and [an internal review panel] had already determined he did.)." The airline notes that in contrast, Palova maintains that "she did not take action that constituted

---

[4] As mentioned earlier, Palova included, in her original Complaint, a breach-of-contract claim that hinged completely on the JCBA. But she removed that claim from her Amended Complaint.

prohibited parking at all," and accordingly, resolution of her claims requires consideration of the JCBA. *Id.*

The distinction is factually correct: the factual allegations within the operative complaint are steeped with explanations on how Palova's conduct did not constitute parking. But her causes of action contest that the real reason for her termination is her age, and that alleged motivation "do[es] not bring the meaning of any CBA provisions into dispute." *Carmona*, 536 F.3d at 349. While it is true that the district "court would have to *refer to* the CBA to consider fully each of the alleged acts of disparate treatment," mere reference to a bargaining agreement in resolving a claim does not necessitate a finding of RLA preemption or preclusion. *Id.*

That difference makes United's chief case—*Reece v. Houston Lighting & Power Co.*, 79 F.3d 485 (5th Cir. 1996), *cert. denied*, 519 U.S. 864—readily distinguishable. Reece was a cable splicer who worked for a Texas utility company, and his employment was accordingly governed under the Labor Management Relations Act ("LMRA"). No. CIV. A. H-95-1025, 1995 WL 813690, at *1 (S.D. Tex. July 25, 1995), *aff'd*, 79 F.3d 485 (5th Cir. 1996). Reece alleged that his employer denied him promotions and training opportunities because of his race. 79 F.3d at 486. On appellate review, this court affirmed the district court's conclusion that the LMRA preempted those claims because the employer would "undoubtedly rely on the CBA as its legitimate, non-discriminatory reason for Reece's treatment." *Id.* at 487. We also reasoned that when the burden returned to Reece to show that his employer's reason was pretextual, his response would necessarily challenge his employer's "rights under the CBA." *Id.*

But *Reece* holds a critical difference from Palova's dispute. Reece's claim—that he was not promoted because of his race—turned completely on "questions of promotion, seniority, and assignment to training programs, *all*

*of which are provided for in the CBA*." 79 F.3d at 487 (emphasis added). *Carmona* expressly distinguished *Reece* on this fact alone: "the [*Reece*] plaintiff directly challenged his employer's rights under the CBA, all of which required interpretation of the CBA." 536 F.3d at 350. Resolving the question of why Palova was *fired*, on the other hand, requires *reference* to the JCBA, but ultimately turns on an alleged *pattern* of firing consistent with age discrimination. Thus, the district court need not interpret the JCBA by deciding whether Palova was actually engaged in parking but instead must only determine whether United treated younger employees accused of similar conduct the same way. This distinction is also illuminated by applying this court's minor disputes test for RLA preemption. While *Reece* featured claims embedded in the "express and implied terms of the parties' collective bargaining agreement," Palova's age discrimination claims are not. *Sw. Airlines Pilots Ass'n*, 120 F.4th at 483 (citation omitted).[5]

At bottom, United's defense is nearly identical to that employed by Southwest in *Carmona*: demonstrating a non-discriminatory motive for termination forces an employer to rely on the CBA to defend its conduct—in Southwest's case, its "attendance policy, procedures for obtaining medical and sick leave, and discipline and termination procedures"; for United, its parking regulations. 536 F.3d at 348. But the *Carmona* court rejected that rationale because the legal elements of the plaintiff's causes of action—that he was terminated due to sex discrimination—did "not bring the meaning of any CBA provisions into dispute." *Id.* at 349. So too, here: Palova's state and federal age discrimination claims cannot be "conclusively resolved"

---

[5] This principle also distinguishes the instant case from *Kollar v. United Transp. Union*, 83 F.3d 124 (5th Cir. 1996). In that case, "the relevant underlying issue . . . is Plaintiffs' seniority. Seniority is controlled by the CBA and modifying agreements." *Id.* at 126.

through interpretation of the JCBA because the key question is not whether Palova engaged in parking, but only whether United treated her differently based on her age. Accordingly, the RLA does not preempt or preclude her claims. *Id.* at 348.

## IV.

Palova also raises two separate issues that, because of our above conclusion, do not necessitate resolution at this stage of the proceedings. First, she asserts that a finding of preemption and preclusion would violate both her Seventh Amendment right to a jury trial and the ADEA's jury trial guarantee. But claims must be "properly presented to the district court" to be eligible for appellate review. *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002). And in her opposition to United's Motion for Summary Judgment, Palova failed to discuss how a preemption finding would violate her Seventh Amendment and ADEA jury trial rights. In any event, given our finding that the RLA does not require that Palova's suit be arbitrated, we need not resolve Palova's alternative argument.

Second, Palova asserts that the district court abused its discretion by "implicitly den[ying]" her motion to supplement the evidentiary record. Specifically, about a week before the district court ruled on United's summary judgment motion, Palova sought "leave to supplement her response to United's Motion for Summary Judgment" with a Pinterest meme, "pinned" by a user alleged to be Palova's supervisor, that mocked senior flight attendants. Presumably, the district court did not rule on Palova's motion because its RLA determination mooted any need to supplement the record. Because that determination was incorrect, it is appropriate to remand the case, including Palova's pending motion, to the district court for further consideration.

## V.

No. 24-20136

For the reasons discussed above, we VACATE the district court's grant of summary judgment and REMAND the case to the district court for further proceedings consistent with this opinion.