Spero SARIDAKIS, Plaintiff–Appellant,

v.

UNITED AIRLINES, Defendant–Appellee.

No. 97–17354.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 11, 1998.

Decided Feb. 3, 1999.

William M. Simpich and Matthew Siegel, Oakland, California, for the plaintiff-appellant.

William J. Dritsas and Amy Gustafson, Seyfarth, Shaw, Fairweather & Geraldson, San Francisco, California, for the defendant-appellee.

Before: FARRIS, REINHARDT, and MICHAEL DALY HAWKINS, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

Spero Saridakis ("Saridakis"), a former United Airlines ("United") mechanic, appeals the district court's dismissal, for lack of subject matter jurisdiction, of his claims against United under the Americans with Disabilities Act, 42 U.S.C. § 12111 ("ADA"), California's Fair Employment and Housing Act, § 12940 ("FEHA"), wrongful discharge in violation of public policy, intentional and negligent infliction of emotional distress and spoliation of evidence. Saridakis alleges United's decision to terminate him after a drug test revealed the presence of a drug legally prescribed to him for his disability constitutes discrimination.

## FACTS AND PROCEDURAL HISTORY

In 1984, United hired Saridakis as an airframe maintenance mechanic, a position classified as safety-sensitive.[1] Between 1988

---

1. Because the district court dismissed Saridakis's claims without ruling on the merits, all the allegations of material fact in the complaint are taken as true, including all reasonable inferences derived therefrom and construed in the light most favorable to the plaintiff. *See Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir.1998). Therefore, we take these facts directly from Saridakis's

and 1993, Saridakis sustained a number of non-work related injuries, including an injury to his anterior cruciate ligament which required surgery and a loss of work for six months. Saridakis suffers from resulting acute bursitis, knee complications, recurrent rectal fissures and insomnia.

On January 27, 1993, Saridakis tested positive for cocaine during a random drug test administered pursuant to United's federally mandated drug testing program and the collective bargaining agreement ("CBA") between United and the union. Instead of firing Saridakis as permitted by the CBA, United offered and Saridakis accepted a rehabilitation and continued employment agreement on February 26, 1993 (hereinafter "last chance agreement"). Under this agreement, Saridakis agreed to abstain from taking medically unauthorized or illegal drugs and to submit to random drug tests for five years.[2] Saridakis's failure to comply with the conditions of the last chance agreement or to pass a drug test allowed United to terminate him without considering any mitigating factors.

At about the same time, Saridakis's physician began prescribing him Marinol, a synthetic drug which contains THC (tetrahydrocannabinol), the active ingredient in marijuana, for his pain and insomnia stemming from his injuries. The physician elected to prescribe Marinol because Saridakis had suffered from side effects with other drugs. Saridakis then began submitting to a series of drug tests under his agreement with United and tested negative. On each occasion, for approximately two and one-half years, Saridakis told United's medical review officer that he was taking Marinol pursuant to a doctor's prescription. Neither United nor any of its medical review officers ever advised Saridakis to discontinue using Marinol or informed him that the drug was "medically unauthorized."

On one occasion when a drug test came back positive for THC, Saridakis explained that he used Marinol for a medical condition, and the medical review officer declared the test negative.

In the fall of 1995, Saridakis returned to work after surgery, was placed in a non-safety-sensitive position, and continued to submit to drug tests. In the tests that followed, Saridakis reported his Marinol use, the results were negative, and he was not instructed to discontinue Marinol. In November 1995, Saridakis's drug test came back positive. When he informed United's medical review officer, Dr. Richard Jensen, of his Marinol prescription, Dr. Jensen refused to reverse the positive result because he found the use of Marinol for insomnia and pain "unauthorized." On May 7, 1996, United discharged Saridakis. It stated that his Marinol use was unauthorized and that he had failed to comply with the terms of the last chance agreement.

After termination, Saridakis filed suit against United alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12111 ("ADA"), California's Fair Employment and Housing Act, CA Code § 12940 ("FEHA"), wrongful discharge, intentional and negligent infliction of emotional distress and spoliation of evidence.[3] In response to Saridakis's first amended complaint, United filed a Rule 12 motion to dismiss. Without reaching the merits of his complaint, the district court dismissed all of Saridakis's claims as preempted by the Railway Labor Act, 45 U.S.C. § 151.

We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm in part and reverse in part.

## ANALYSIS

### I.

Dismissal for lack of subject matter jurisdiction is a question of law we review de

---

complaint and do not examine their accuracy or merit.

2. The agreement did not define the term "medically unauthorized."

3. Saridakis also alleged free speech violations under the California Constitution, Art. 1, Sec. 2 and a violation of 42 U.S.C. § 1983. The district

court dismissed these claims and Saridakis did not appeal this ruling. However, on this appeal, Saridakis argues, for the first time, that United violated his right to privacy under the California Constitution. Since this claim was not raised below, this panel need not and will not consider it. See Moran v. Aetna Life Ins. Co., 872 F.2d 296, 300 (9th Cir.1989).

novo. *See Ward v. Mgt. Analysis Co.*, 135 F.3d 1276, 1279 (9th Cir.1998); *Farr v. United States*, 990 F.2d 451, 453 (9th Cir.1993). In evaluating such a motion, we construe the complaint's allegations in the light most favorable to the pleader. *See Mason v. Unkeless*, 618 F.2d 597, 598 n. 2 (9th Cir.1980). Because the district court dismissed the complaint before reaching the merits, we confine our independent review to the jurisdictional issue. *See Vestron, Inc. v. Home Box Office, Inc. and HBO Video*, 839 F.2d 1380, 1381 (9th Cir.1988).[4]

## II.

■ We must address a narrow issue: United's contention that the RLA preempts the ADA. The touchstone of preemption is the presence of a state law claim. Congress's preemption power is derived from the Supremacy Clause of the Constitution. *See Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). State law is preempted when it conflicts with federal law, would frustrate a federal scheme, or where Congress clearly intended to occupy the field. *Id.* The preemption doctrine per se does not govern questions relating to the compatibility of two or more federal laws. *See Felt v. Atchison, Topeka & Santa Fe Railway Co.*, 60 F.3d 1416, 1418–19 (9th Cir.1995). Nevertheless, we must determine whether Congress intended the RLA's mandatory arbitration scheme to preclude Saridakis from bringing an independent action under the ADA. *Id.* at 1419. Like the preemption question, this inquiry centers on congressional intent. *Id.*

■ Congress enacted the RLA to "promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 253, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). This framework includes "a mandatory arbi-

tral mechanism for 'minor' [and major] disputes." *Id.* Major disputes relate to "the formation of the collective bargaining agreements or efforts to secure them." *Felt*, 60 F.3d at 1419. In contrast, minor disputes "involve controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." *Hawaiian Airlines*, 512 U.S. at 253, 114 S.Ct. 2239.

■ Since they often depend on particularized facts, minor disputes resist a rigid definition. To be sure, though, "[m]inor disputes seek to enforce contractual rights . . . [and] may be conclusively resolved by interpreting the existing CBA." *Id.*; *see also Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 413, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (a dispute is minor only if it requires an "interpretation of [the] collective bargaining agreement."). In *Hawaiian Airlines*, the Supreme Court stated that a minor dispute "does not involve rights that exist independently of the [collective bargaining agreement]." 512 U.S. at 265, 114 S.Ct. 2239. Likewise, we have found that "a minor dispute cannot involve rights that emanate from sources outside the agreement." *Felt*, 60 F.3d at 1419.

While we have yet to squarely address the intersection of the ADA and the RLA, we have held that rights created by other antidiscrimination statutes such as Title VII and California's Fair Employment and Housing Acts are independent of a CBA and thus claims brought pursuant to these acts are not minor disputes. *See Espinal v. Northwest Airlines*, 90 F.3d 1452, 1456–58 (9th Cir. 1996) (RLA does not preempt claim under the FEHA); *Felt*, 60 F.3d at 1419 (Title VII claim independent of CBA); *Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514 (9th Cir.1995) (FEHA claim for disability discrimination in employment independent, not preempted); *Ackerman v. Western Electric Co.*, 860 F.2d 1514, 1517 (9th Cir.1988) (same).[5] Similarly,

---

4. United urges us to exercise discretion and conclude that if Saridakis's claims are not preempted and subject matter jurisdiction exists, Saridakis's complaint fails to state a claim upon which relief may be granted. Since the district court dismissed the claims for lack of subject matter jurisdiction, we limit our review to addressing solely the jurisdictional issues.

5. Because these cases directly address and reject United's contention that the RLA preempts Saridakis's FEHA claim, a separate analysis is unnecessary. It is enough to say that any discussion of United's arguments with respect to the ADA apply with equal force to the FEHA even though the FEHA is a state law claim.

the ADA provides an "extensive and broad[ ] ground for relief, specifically oriented towards the elimination of discriminatory employment practices." *Benson v. Northwest Airlines,* 62 F.3d 1108, 1115 (8th Cir.1995).

A stated purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)(2)(4). As with Title VII rights, the rights emanating from the ADA exist independently of any employment rights granted by a CBA. Here, while the CBA, like the ADA, contains an anti-discrimination clause and provides a dispute resolution mechanism, the CBA does not define the rights that exist under the ADA. Saridakis's ADA claim cannot be "conclusively resolved" by interpreting the CBA. *Felt,* 60 F.3d at 1419. Instead, whether his ADA claim is meritorious ultimately depends on the application of the ADA standards, not the CBA. Thus, a dispute under the ADA is not minor and the RLA does not preclude Saridakis's independent litigation of his ADA rights.[6]

United contends that because its defense to Saridakis's charge of disability discrimination is based on a contractual right to terminate him, the CBA is inextricably implicated and the dispute is minor. In *Hawaiian Airlines,* however, the Supreme Court explicitly rejected this argument. It stated that whether the termination is "arguably justified" by the CBA's provisions is only relevant in policing the line between major and minor disputes and says "nothing about the threshold question whether the dispute was subject to the RLA in the first place." 512 U.S. at 265–66, 114 S.Ct. 2239. Here, the issue is whether Saridakis's disability claims under the ADA and FEHA are, in the first instance, subject to the RLA. In addressing this threshold question, United's justification for terminating Saridakis is of no import. Our inquiry is strictly limited to determining if the rights under the ADA and FEHA are derived from sources independent of the CBA. We are satisfied they are.

United also argues that the ADA and FEHA claims are minor because such claims involve the question whether Saridakis was fired pursuant to the CBA's provisions. Again, the Supreme Court has answered: "as long as the ... claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement." *Id.* at 261–62, 114 S.Ct. 2239. Even if the ADA and FEHA claims require the court to review the facts underlying Saridakis's termination, this does not appear to be the sort of interpretation to which the Court referred. "Purely factual questions about an employee's conduct or an employer's conduct and motives do not require a court to interpret any term of a collective-bargaining agreement." *Id.* at 261, 114 S.Ct. 2239. Here, the ADA and FEHA claims will require a court to examine whether United terminated Saridakis because of his disability. Although United may be able to introduce and rely upon the CBA and the last chance agreement as a part of its defense, under the Supreme Court's recent ruling that would not be enough to render the dispute minor and therefore subject to the RLA's dispute resolution mechanism.

### III.

In addition to statutory claims, Saridakis's complaint brings the state tort claims of wrongful discharge and intentional and negligent infliction of emotional distress against United.[7] Unlike his ADA claim,

---

6. Other courts have also found ADA rights independent of the RLA and therefore beyond the scope of what is deemed a minor dispute. *See Ralph v. Lucent Technologies,* 135 F.3d 166, 171 (1st Cir.1998); *Benson,* 62 F.3d at 1115; *Bartush v. Northwest Airlines,* 918 F.Supp. 379, 381 (M.D.Fl.1996).

7. Saridakis also alleges the tort of intentional spoliation of evidence based on his assertion that United destroyed the "lone urine sample." Recently, the California Supreme Court held that

"there is no tort remedy for the intentional spoliation of evidence, in cases in which, as here, the spoliation victim knows ... of the alleged spoliation before [a] decision on the merits of the underlying action." *Cedars–Sinai Medical Ctr. v. Superior Court of Los Angeles County,* 18 Cal.4th 1, 14, 74 Cal.Rptr.2d 248, 954 P.2d 511 ( Cal. 1998). Because Saridakis knew of the spoliated evidence prior to any ruling on the merits, he has no tort remedy under California law. Therefore, we need not decide whether such a claim is preempted.

these claims are state law claims and may be preempted by the RLA if their resolution depends upon an interpretation of the CBA. *See e.g., Hawaiian Airlines,* 512 U.S. at 261–62, 114 S.Ct. 2239; *Lingle,* 486 U.S. at 405–06, 108 S.Ct. 1877. There is no preemption, however, if these disputes involve rights that exist independent of the CBA. *See Hawaiian Airlines,* 512 U.S. at 264–65, 114 S.Ct. 2239. Thus, we must determine whether the resolution of any of these state claims is dependent upon an analysis of the CBA's provisions.

For preemption purposes, the viability of Saridakis's wrongful discharge claim is largely dependent on *City of Moorpark v. Superior Ct.,* 18 Cal.4th 1143, 77 Cal.Rptr.2d 445, 959 P.2d 752 (Cal.1998), where the California Supreme Court held that because disability discrimination violates public policy, an employee may bring a separate wrongful discharge claim for such discrimination. The *Moorpark* court further held that such wrongful discharge claims are independent and not preempted by either the FEHA or California's worker's compensation laws. *Id.* We are bound by those holdings. Likewise, we have made clear that wrongful discharge claims based on public policy violations are not preempted by federal labor laws because such claims are derived from sources outside the CBA. *See e.g., Paige v. Henry J. Kaiser Co.,* 826 F.2d 857, 862 (9th Cir.1987); *Harper v. San Diego Transit Corp.,* 764 F.2d 663, 668 (9th Cir.1985). Moreover, *Hawaiian Airlines* ultimately held that the claim for wrongful discharge in violation of public policy was not preempted by the RLA, because state tort law provided an independent right. While not a model of clarity, Saridakis's wrongful discharge claim essentially alleges his termination was due to disability discrimination, not a breach of the CBA. Although Saridakis could possibly contest his termination under both the CBA and state law, this does not render his wrongful discharge claim dependent. *See Hawaiian Airlines,* 512 U.S. at 261, 114 S.Ct. 2239. Under California law, his allegations give rise to a right separate, distinct, and independent of the CBA. Thus, Saridakis's wrongful discharge claim based on a violation of public policy is not preempted by the RLA.

As with his wrongful discharge claim, Saridakis's emotional distress claims will only be preempted "if they can be resolved by referring to the terms of the collective bargaining agreement." *Perugini v. Safeway Stores, Inc.,* 935 F.2d 1083, 1087 (9th Cir.1991). Under California law, a prima facie case for intentional infliction of emotional distress requires Saridakis to prove that United's conduct was "outrageous." *See e.g., Schneider v. TRW, Inc.,* 938 F.2d 986, 992 (9th Cir.1991); *Trerice v. Blue Cross of California,* 209 Cal.App.3d 878, 883, 257 Cal. Rptr. 338 (Cal.App.1989). Conduct is deemed outrageous if it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Cervantez v. J.C. Penney Co.,* 24 Cal.3d 579, 593, 156 Cal.Rptr. 198, 595 P.2d 975 (Cal.1979).

We have repeatedly held that determining whether an employer's conduct is outrageous requires an interpretation of the terms of the CBA, and therefore the claim is not independent. *See e.g., Stone v. Writer's Guild of America West, Inc.,* 101 F.3d 1312,-1314 (9th Cir.1996); *Grote v. Trans World Airlines, Inc.,* 905 F.2d 1307, 1310 (9th Cir. 1990); *Miller v. AT&T Network Systems,* 850 F.2d 543, 550 (9th Cir.1988). When the outrageous conduct alleged is based on discrimination, we still decline to find the claim independent of the CBA. *See Cook v. Lindsay Olive Growers,* 911 F.2d 233, 239–40 (9th Cir.1990). For example, in *Cook,* we held that even where the plaintiff claimed his discharge was based on religious discrimination, "the terms of the collective bargaining agreement must be examined and interpreted to determine whether [the employer's] behavior was extreme and outrageous." *Id.* at 239. Thus, in accordance with our precedent, in order to determine whether United's conduct was outrageous we must construe the collective bargaining agreement, including United's drug policy, discharge policy and the last chance agreement between Saridakis and United. Consequently, Saridakis's claim for intentional infliction of emotional distress cannot be interpreted independently of the CBA and is therefore preempted by

the RLA.[8]

## CONCLUSION

We hold that Saridakis's ADA claim is not a minor dispute precluded by the Railway Labor Act because this federal right exists independently of the collective bargaining agreement between United and the union. Further, Saridakis's FEHA claim and wrongful discharge in violation of public policy claim are similarly independent and therefore, not subject to RLA preemption. We affirm the district court's dismissal of Saridakis's intentional and negligent infliction of emotional distress claims as preempted because such claims require the interpretation of both the CBA and the last chance agreement.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.** Costs on appeal to appellant.

---

8. Saridakis's claim for negligent infliction of emotional distress was also properly dismissed as preempted. Under California law, "the relevant inquiry is whether the risk of harm to the plaintiff from the negligent act of the defendant was reasonably foreseeable; if so, the defendant owes that plaintiff a duty to exercise due care." *Perugini*, 935 F.2d at 1089. Therefore, while this tort does not require Saridakis to prove that United's conduct was outrageous, he must prove the element of forseeability. *See Wooden v. Raveling*, 61 Cal.App.4th 1035, 71 Cal.Rptr.2d 891 (Cal.App.1998). On this basis, we hold that the negligent infliction claims are preempted.