Veronica PEARSON, Plaintiff,

v.

NORTHWEST AIRLINES, INC. Long–Term Disability Income Plan; American General Assurance Company; and Does 1 through 5, Defendants.

Case No. EDCV 09–257(SGL)(RCx).

United States District Court,
C.D. California.

Oct. 4, 2009.

Debra K. Butler, Debra K. Butler Law Offices, Tujunga, CA, for Plaintiff.

Michael K. Brisbin, Wilson Elser Moskowitz Edelman & Dicker LLP, San Francisco, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

STEPHEN G. LARSON, District Judge.

Plaintiff Veronica Pearson ("plaintiff" or "Pearson") filed this suit on February 6, 2009 against the Northwest Airlines, Inc. Long–Term Disability Income Plan ("the Plan"), American General Assurance Company ("AGAC"), and five unnamed Does (collectively "defendants"), alleging a breach of the Employee Retirement Income Security Act of 1974 ("ERISA"). Before the Court is defendants' motion to dismiss, which forces the Court to examine the terms of the Plan contract, and the intersection of ERISA and the Railway Labor Act ("RLA").

## I. FACTUAL BACKGROUND

From 1994 through 2004, Pearson was employed by Northwest Airlines ("Northwest") as a ramp worker at Los Angeles International Airport (LAX). Compl. ¶ 2. As an employee of Northwest and a member of the International Association of Machinists and Aerospace Workers (IAMAW) Union–District 143, Pearson participated in the Plan, an employee welfare benefit plan sponsored by Northwest, and created pursuant to a collective bargaining agreement ("the CBA"), paying premiums out of her paycheck. Compl. ¶ 3. The Plan is administered by Northwest Airlines, and claims are administered by AGAC. Compl. ¶¶ 3–4. Disability RMS Administrators ("Disability RMS") appears to be a sub-administrator hired by AGAC to process claims. Compl. ¶¶ 4, 9.

Pearson alleges she became totally disabled on January 28, 2004 as a result of multiple workplace injuries to her back, arm, and hand. Compl. ¶ 8. She has been paid permanent disability benefits under Northwest's worker's compensation insurance policy pursuant to a compromise approved by an Administrative Law Judge on April 22, 2008. Compl. ¶ 8.[1]

Pearson also filed a claim for long-term disability ("LTD") benefits under the Plan on March 27, 2007. Compl. ¶ 9. Pearson claims she did not know she was eligible for LTD benefits under the Plan, offset by the amount of her worker's compensation benefits, until told by a co-worker in or about March 2007. *Id.* Upon investigating Pearson's claim and supporting documentation, on May 16, 2007, Disability RMS informed Pearson that it required further medical records from her physician, Dr. David L. Wood. Compl. ¶ 10. Pearson does not indicate these records were ever provided, but instead suggests that the Plan already "had all the evidence necessary to find plaintiff totally disabled under the terms of the LTD Plan." Compl. ¶ 10.

On June 7, 2007, Disability RMS denied Pearson's claim as untimely. Plaintiff appealed this denial on July 20, 2007. Compl. ¶¶ 12–13. Appeals Analyst Deborah Cole initially indicated Disability RMS needed more information to resolve the appeal. Compl. ¶ 12. However, Disability RMS then sent Pearson a letter on August 14, 2007, indicating it was upholding the decision that the claim was untimely, and noting that "This decision is based on the receipt of additional information, not known at the time of Deborah Cole's initial appellate determination." Compl. ¶ 13. Pearson's subsequent request for a voluntary review on the basis that "other employees had filed claims beyond the 'allowed time stated in the policy' and she felt she was being treated unfairly" was denied on September 20, 2007. Compl. ¶ 14.

Pearson claims the denial of LTD benefits was wrongful, in that the Plan and AGAC "knew, or should have known, that Plaintiff was entitled to [ ] benefits under the terms of the LTD Plan;" "failed to provide a prompt and reasonable explanation of the basis relied on" in denying her claim;" "failed to adequately describe to Plaintiff any additional material or information necessary for Plaintiff to perfect her claim along with an explanation of why such material is or was necessary;" "conceal[ed] and withh[eld] from Plaintiff the notice requirements [sic] American General and the LTD Plan were required to provide Plaintiff pursuant to ERISA"; failed "to properly and adequately investigate the merits of" Pearson's claim; failed to inform plaintiff of her right to file a claim; and failed to "apply the correct law to Plaintiff's claim." Compl. ¶ 16.

---

**1.** The complaint does not indicate when her workers' compensation claim was filed.

Pearson seeks restitution of all past benefits due, unspecified damages, attorneys' costs and fees, and declaratory and injunctive relief.

## II. LEGAL STANDARD

Defendants bring this motion under Rules 12(b)(6) and 12(f).

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965.

■ However, since defendants move, in part, for dismissal on the basis of a lack of subject-matter jurisdiction, discussed below, the motion should also have been filed under Rule 12(b)(1).[2] As the Ninth Circuit has recently explained, a 12(b)(1) motion for dismissal for lack of subject-matter jurisdiction and a 12(b)(6) motion for dismissal for failure to state a claim are based on distinct concepts: "the former determines whether the plaintiff has a right to be in the particular court and the latter is an adjudication as to whether a cognizable legal claim has been stated." *Trustees of Screen Actors–Guild–Producers Pension & Health Plans v. NYCA, Inc.,* 572 F.3d 771 (9th Cir.2009), *quoting* 5B Wright & Miller, *Federal Prac. & Pro.* § 1350 (3d ed. 2004). "Unless the jurisdictional issue is inextricable from the merits of a case, the court may determine jurisdiction on a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure." *Kingman Reef Atoll Investments, L.L.C. v. United States,* 541 F.3d 1189, 1195 (9th Cir.2008).

■ On a Rule 12(b)(1) motion, "the district court is free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. In such circumstances, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id., quoting Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir.1987).

Rule 12(f) allows a party to move that the court to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Although defendant labelled this motion as one falling under Rule 12(f), the contents of the motion do not discuss a motion to strike at all.

## III. DISCUSSION

■ Defendants move to dismiss this action on the bases that (1) the court lacks subject-matter jurisdiction over this dispute due to the RLA and (2) plaintiff's action is time-barred under the terms of the contract.

### A. JURISDICTION

### 1. THE RLA AND "MINOR DISPUTES"

Defendants argue that the RLA, which governs labor relations involving airline

---

**2.** Since the Court "may raise the question of subject matter jurisdiction, sua sponte, at any time during the pendency of the action," the mislabelling of the action is of no import.

*Snell v. Cleveland, Inc.,* 316 F.3d 822, 826 (9th Cir.2002). *See also Scholastic Entm't, Inc. v. Fox Entm't Group, Inc.,* 336 F.3d 982, 985 (9th Cir.2003).

employees, vests mandatory, exclusive jurisdiction for the adjudication of this dispute in a "system board of adjustment." Section 204 of the RLA "requires that an air carrier and its employees establish a system board of adjustment with jurisdiction over disputes 'growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.'" *Kozy v. Wings West Airlines, Inc.*, 89 F.3d 635, 638 (9th Cir.1996), *quoting* 45 U.S.C. § 184. Under section 204, disputes between employees and employers are classified into two categories. "Major disputes concern statutory rights, such as the right to form collective bargaining agreements or to seek to secure new rights and incorporate them into future agreements. Federal courts have jurisdiction to decide major disputes. Minor disputes, on the other hand, concern the interpretation or application of collective bargaining agreements, and are resolved through binding arbitration before the System Board of Adjustment. Federal courts do not have jurisdiction to resolve minor disputes." *Ass'n of Flight Attendants, AFL–CIO v. Horizon Air Industries, Inc.*, 280 F.3d 901, 904 (9th

Cir.2002) (citations omitted). Defendants contend that plaintiff's claim entails a "minor dispute," and thus the court lacks jurisdiction over the matter.

■■■ Pearson makes numerous arguments in response.[3] As a preliminary matter, two of these arguments are quickly disposed of. First, Pearson argues that, since they were not parties to the CBA, the Plan and AGAC do not have standing to assert this argument. Opp'n at 2. Plaintiff cites no case law in support of this argument. Opp'n at 2. Even if this were simply a matter of contract law, the Plan and AGAC as, respectively, a creation of and the third-party beneficiary of Art. 27, Section M of the CBA, would likely be able to assert this defense. Moreover, the complaint itself alleges that Northwest, indisputedly a party to the CBA, is the administrator of the Plan.[4] Compl. ¶ 3. But here, the claim is that a *statute* divests this court of jurisdiction. Accordingly, whether the parties asserting this defense were parties to the CBA is irrelevant. Notably, numerous courts, including the Ninth Circuit, have found system boards of adjustment to have exclusive jurisdiction over

---

**3.** At the hearing on this motion, plaintiff's counsel also repeatedly raised the issue that, in other ERISA cases, Northwest and its counsel have not raised this defense. A defense on the basis of subject-matter jurisdiction is never waived, however. *Ashcroft v. Iqbal*, ── U.S. ──, 129 S.Ct. 1937, 1945, 173 L.Ed.2d 868 (2009), *citing Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). Even if defendants had failed to raise the issue earlier in *this* case, the Court would be obligated to consider the issue. In a related analytical error, plaintiff's counsel repeatedly cites to unpublished district court cases from outside this circuit, most recently in her ex parte application for permission to lodge supplemental briefs, where ERISA claims proceeded against airline employee benefit plans without mentioning the RLA and its jurisdictional impact. *See, e.g., Carr v. American Gen. Assurance Co.*, Civil No. 08–645(DSD/JJG), 2009

WL 2461726 (D.Minn. Aug. 10, 2009). Since these cases do not discuss the RLA and its effects at all, they have neither precedential nor persuasive value on the instant issue.

**4.** Although Northwest was not named as a party in this suit, plaintiff inexplicably includes in her complaint the allegation that Northwest violated ERISA by failing "to submit Plaintiff's claim for long term disability benefits to its LTD insurer, American General, or to advise Plaintiff of her right to do so, despite its knowledge that Plaintiff had been injured and has been completely unable to work since February 3, 2004...." Compl. ¶ 16(g). Since Northwest was not named as a party, and plaintiff insists she "has no dispute with either her former employer, Northwest Airlines, nor her Union," Opp'n at 2, the Court disregards this allegation.

suits brought against pension benefit plans, even though the plans themselves were not parties to a CBA. *See Long v. Flying Tiger Line, Inc. Fixed Pension Plan for Pilots,* 994 F.2d 692 (9th Cir.1993) (holding system board had exclusive jurisdiction over ERISA suit brought against pension plan); *see also Stephens v. Retirement Income Plan for Pilots of U.S. Air, Inc.,* 464 F.3d 606 (6th Cir.2006) (holding system board had exclusive jurisdiction over parts of ERISA suit brought against pension plan); *Jenisio v. Ozark Airlines, Inc. Retirement Plan for Agent & Clerical Employees,* 187 F.3d 970 (8th Cir.1999) (holding system board had exclusive jurisdiction over ERISA suit brought against pension plan). If pension benefit plans have standing to assert this defense, there is no reason that a disability benefit plan like the Plan here cannot.

Second, Pearson repeatedly suggests that the RLA cannot "apply" to ERISA claims at all. This, however, is a matter of settled law in the Ninth Circuit, as well as all other circuits to have considered the question. In *Long,* the court rejected this an argument, and held that a federal court lacks jurisdiction over an ERISA claim if that claim is a dispute falling under the exclusive jurisdiction of a system board of adjustment. The court explained:

> If we were to find subject matter jurisdiction over such a claim, we would eviscerate the Railway Labor Act's system of arbitrating disputes. No longer would the decision of a system adjustment board be the final word on disputes "growing out of . . . the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 184.

Nothing in ERISA's legislative history supports such a sweeping change in the treatment of Railway Labor Act claims. To the contrary, Congress's enactment of ERISA, which opened the federal courts to suits over the interpretation of pension plans, did not modify the exclusivity of this pattern of the Railway Labor Act. ERISA explicitly provides: "Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law." 29 U.S.C. § 1144(d).

994 F.2d at 695 (9th Cir.1993) (citations omitted). *See also Hastings v. Wilson,* 516 F.3d 1055, 1059 (8th Cir.2008) (rejecting argument that "Congress did not intend the RLA's mandatory arbitration scheme to apply to ERISA claims"); *Jenisio,* 187 F.3d at 973 n. 5 ("ERISA, which was enacted after the RLA, does not affect our analysis of the RLA's mandatory arbitration provision"); *Coker v. Trans World Airlines, Inc.,* 165 F.3d 579 (7th Cir.1999) (finding RLA provision applied to ERISA claims, but particular claim not barred since it was a "major dispute").

■ This thus leaves Pearson's primary argument that this action cannot be categorized as a "minor dispute" falling under the exclusive jurisdiction of the system board of adjustment.[5] Opp'n at 2–3. If this is such a dispute, though, she claims it is a "major" one and not a "minor" one. Opp'n at 3. Certainly, the RLA does not vest jurisdiction in system boards of adjustment of *all* disputes related to employ-

---

**5.** Plaintiff attempts to argue separately that (1) this is not a "dispute" covered by section 204, and (2) even if it is, it is a major one, and not a minor one. As demonstrated by the discussion below, the law of section 204 does not consider these to be two separate questions. In terms of section 204, the universe of claims consists solely of major disputes, which can be brought in federal court, and minor disputes, which cannot.

ment. The Supreme Court has expressly rejected the idea that "all employment-related disputes, including those based on statutory or common law" fall under the exclusive jurisdiction of the system board of Adjustment; "the RLA's mechanism for resolving minor disputes does not pre-empt [6] causes of action to enforce rights that are independent of the CBA." *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 253, 265, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). To determine if they have jurisdiction, courts are to examine the relationship of the dispute to the CBA; " 'minor disputes' are those that are 'grounded' in the collective bargaining agreement." *Felt v. Atchison, Topeka & Santa Fe Ry. Co.,* 60 F.3d 1416 (9th Cir.1995), *citing Hawaiian Airlines v. Norris* 512 U.S. 246, 256, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). "A minor dispute cannot involve rights that emanate from sources outside the agreement." *Id.* at 1419.

■ The burden of establishing that a dispute is not minor lies with the party seeking to bring a RLA-related claim in federal court. Plaintiff faces a high burden, as "courts should characterize a dispute as minor if it is even 'arguably justified' that the dispute turns on the application of the CBA." *Coker,* 165 F.3d at 584, *citing Norris,* 512 U.S. at 265–66, 114 S.Ct. 2239; *see also Jenisio,* 187 F.3d at 972 (noting "a party shoulders a relatively light burden in establishing exclusive arbitral jurisdiction under the RLA" (citation omitted)).

## 2. THE DEPENDENCE OF PLAINTIFF'S CLAIMS ON THE CBA

Other than the notion that it is one "grounded" in the CBA, the Ninth Circuit has provided little guidance as to what constitutes a "minor dispute." "Since they often depend on particularized facts, minor disputes resist a rigid definition." *Saridakis v. United Airlines,* 166 F.3d 1272, 1276 (9th Cir.1999). The Ninth Circuit has continually emphasized, though, that the general focus of this inquiry is the source of the rights at issue. *See Saridakis, id.; Espinal v. Northwest Airlines,* 90 F.3d 1452, 1456 (9th Cir.1996) ("In RLA cases then, as in LMRA cases, courts must look to the source of the right asserted by the plaintiff.").

It is clear that if Pearson's claims solely involved the interpretation of language directly contained in the CBA, this case would be a minor dispute. In *Long,* the Ninth Circuit considered an ERISA suit brought to enforce the terms of the summary plan description of airline employees' collectively bargained pension agreement. The Ninth Circuit reasoned that a "claim relating to the construction of a pension plan" is not one deriving from any independent ERISA substantive right. 994 F.2d at 695. Thus, it was a minor dispute under section 204, and the board of adjustment had jurisdiction to determine "the extent of the pilots' benefits under the collectively bargained pension agreement." *Id.*

---

**6.** As other courts have noted, where, as here, the tension is between two federal laws, the question is technically not one of preemption, since the Supremacy Clause is not implicated. *See, e.g., Saridakis v. United Airlines,* 166 F.3d 1272, 1276 (9th Cir.1999); *Coker v. Trans World Airlines,* 165 F.3d 579, 583 (7th Cir. 1999). Nonetheless, the *Norris* Court's discussion of the RLA's preemptive effect on state law claims and the distinction between major and minor disputes has repeatedly been held to control the adjudication of federal claims in this context. *See, e.g., Saridakis,* 166 F.3d at 1276 (applying *Norris* to determine if RLA precluded Americans with Disabilities Act claim); *Coker,* 165 F.3d at 584 (applying *Norris* to determine if RLA precluded ERISA claim).

Here, though, Pearson argues that her claim does not involve the interpretation of the CBA, but rather of the "proof of loss" provision contained in the AGAC policy. The interpretation of such an "external" document, she argues, is not a minor dispute. Opp'n at 2. The question is thus whether the AGAC policy documents are considered to be "part of" the CBA, or are otherwise analogous to the summary plan document in *Long*.

While the Ninth Circuit has not addressed this issue or any similar one, the Eighth Circuit has. Applying *Norris*, the Eighth Circuit in *Jenisio* held that claims involving the interpretation of a pension plan are "minor disputes" under the RLA if (1) the plan is "itself a CBA" or (2) the plan is "maintained pursuant to a CBA." 187 F.3d at 972. The court explained: "A pension plan is maintained pursuant to a CBA when it is incorporated by reference in that CBA. However, 'mere mentioning' of the pension plan in the CBA does not constitute incorporation by reference." *Id.* at 973. In determining whether a plan is incorporated or "merely mentioned," the court looked to several factors including (1) whether the CBA set forth material amendments to or elements of the plan; (2) whether the plan referenced the CBA; and (3) whether evidence showed the parties to the CBA had bargained for the plan. *Id.* at 973–974. *See also Hedman v. Northwest Airlines, Inc.*, Civ. No. 07–1847 ADM/RLE, 2008 WL 1808257 (D.Minn. Apr. 21, 2008) (applying *Jenisio* to find pension plan was maintained "pursuant to" CBA, and thus claim involved "minor dispute").

Whether the plan is incorporated, though, is not the sole focus of the inquiry. More recently, the Eighth Circuit has elaborated that a "district court, rather than the RLA arbitration board, has jurisdiction over ERISA claims that are inde-pendent of an interpretation or application of any collective bargaining agreements, *even if* the pension plan is created or maintained pursuant to a collective bar-gaining agreement." *Hastings v. Wilson*, 516 F.3d 1055, 1059 (8th Cir.2008) (empha-sis added). Accordingly, one district court has presented the "minor dispute" inquiry as a two-step process. "To determine whether a claim is independent of a collec-tive bargaining agreement, a court first considers whether the alleged right de-rives from a source extrinsic to the collec-tive bargaining agreement itself. If so, the claim is not precluded unless enforce-ment of that right is 'inextricably inter-twined' with the consideration of the col-lective bargaining agreement." *Sturge v. Northwest Airlines, Inc.*, 600 F.Supp.2d 1040, 1043 (D.Minn.2009).

The approach utilized in these cases is consistent with the law of the Ninth Cir-cuit, in that they attempt to determine whether the dispute "involve[s] rights that emanate from sources outside the agree-ment." Where a benefit plan is "incorpo-rated" into the CBA, or enforcement would be "inextricably intertwined" with an inter-pretation of the CBA, the rights at issue effectively derive from the CBA itself. This is consistent with *Long*, where the issue was the interpretation of the docu-ments associated with a collectively-bar-gained for pension plan, not solely the CBA itself. As such, the court will employ the Eighth Circuit's analysis in determin-ing whether the action involves a minor dispute or major dispute.

### a. The LTD Policy is Incorporated into the CBA

The facts here suggest that the LTD Policy was incorporated into the CBA. No-tably, plaintiff's complaint itself states that the All three of the factors noted by the *Jenisio* court are present here.

First, the CBA sets forth material amendments to or elements of the plan. Article 27, Section M, of the CBA between Northwest and IAMAW expressly provides for the creation of a long-term disability income plan. O'Rourke Decl. Ex. B, pp. 27.17–18. This section specifies how a particular insurer will be selected, and that employees and Northwest will each pay one-half of the premiums. *Id.* at 27.17. The section also goes into great detail as to the procedures for grievances under the Plan:

> 6. If a dispute arises as to whether a participant is totally disabled within the meaning of the Plan language, and such dispute is not resolved under the claims review procedures of the Plan, then a review of the matter shall be made by a doctor of medicine mutually acceptable to both the insurer (or Employer if the Plan becomes self-insured) and the participant. The expense of such review will be paid by the insurer or Employer. The determination if such doctor of medicine as to whether or not the participant is totally disabled within the meaning of the Plan shall be final and binding on all parties.
>
> Disputes over the proper interpretation and application of the Plan provisions, other than disputes as to whether a participant is or is not totally disabled, shall be resolved through and in accordance with the Grievance and Dispute Resolution Procedures and System Board of Adjustment procedures of this Collective Bargaining Agreement ...

*Id.* at 27.17–18. This passage not only serves to show that material elements of the policy were addressed in the CBA, but also that the specific issue of how a dispute such as this one was to be resolved was a subject of collectively-bargained agreement between Northwest and IAMAW.

In addition to Section M, the CBA includes an appendix ("Appendix A"), listing "Essential Elements Of New Long–Term Disability Income Plan For IAM–Represented Employees." *Id.* at 27.19–26. This appendix includes extremely specific details for the policy, including the definition of disability to be used and limitations for pre-existing conditions.

Second, the policy documents reference the CBA. In defining eligibility, the documents refer to the classification "covered under the collective bargaining agreement between Northwest Airlines, Inc., and the International Association of Machinists and Aerospace Workers (IAMAW) Union–District 143." O'Rourke Decl., Ex. A. ("the Policy") at 3. Moreover, the Policy includes a provision about the grievance procedure parallel to that contained in the CBA, which states:

> Disputes over the proper interpretation and application of the Plan provisions, other than disputes as to whether a participant is or is not Totally Disabled, shall be resolved through the grievance resolution procedures of the collective bargaining agreement....

The Policy at 15. The Policy also uses the same definitions and terms set forth in the CBA's appendix. The Policy at 4–11.

Finally, the sum of this evidence suggests that the parties to the CBA bargained for the LTD policy and, as mentioned above, this bargain explicitly included a process by which to resolve claims such as plaintiff's.

Since the policy mirrors the language of the CBA, and the evidence suggests the policy was the product of collective bargaining, the Court finds the LTD policy was incorporated into the CBA.

#### b. The Rights at Issue Are Dependent on the CBA

As noted above, the finding of incorporation does not end the inquiry if the

specific rights at issue are "independent" of the CBA. Although she does not present them as such, Pearson's claims can be divided into two categories. First are permutations of the allegation that she was wrongfully denied LTD benefits according to the terms of Plan documents.[7] Compl. ¶¶ 16(a)-(d), (f), (h). In addition to these claims, though, she also alleges AGAC and the Plan failed to provide her with notice of her right to apply for LTD benefits in a timely fashion. Compl. ¶ 16(e). Since, as discussed below, the claims potentially implicate rights from different sources, each must be analyzed separately.

### i. Wrongful Denial–Related Claims

The enforcement of any of Pearson's rights to benefits are inextricably intertwined with the CBA. Pearson concedes that the issue of whether she is entitled to benefits turns solely on an interpretation of the proof of loss provision in the Policy. If the Policy as a whole is incorporated into the CBA, though, it is irrelevant that the CBA itself does not include this particular provision. Where plaintiff's alleged right to benefits derives from a Policy created pursuant to the CBA, the CBA is the "source" of that right.

Plaintiff makes much of the fact that, in denying her claim for benefits as untimely, the Plan and AGAC violated California's "Notice–Prejudice Rule," which requires an insurer to show substantial prejudice when it denies a claim as untimely. But the underlying "right" that plaintiff seeks to vindicate in this case is not the Notice–Prejudice Rule, but her right to benefits. It is this latter right which is dependent on the CBA. Moreover, any enforcement of

the Notice–Prejudice Rule enforcement would be "inextricably intertwined" with the CBA, as the Court would be unable to determine whether the Plan and/or AGAC suffered prejudice due to plaintiff's untimely filing without interpreting the terms of the CBA and the LTD policy. Thus, while the RLA does not preempt the Notice–Prejudice Rule, it does deprive the Court of jurisdiction to resolve this dispute. If the Notice–Prejudice Rule applies to the dispute over Pearson's entitlement to benefits, she may raise this issue before the system board of adjustment and in any subsequent appeals from that decision.

The instant case is also quite different from *Coker*, which Pearson relies on quite heavily. There, the Seventh Circuit held that an ERISA claim based on estoppel, involving factual questions as to whether an employer misrepresented material facts about health insurance coverage, was a "major dispute" and thus within the federal court's jurisdiction. The court focused on the facts to be proved in the case, not on the general legal claim, noting, "The promise [plaintiff] is trying to estop TWA from denying—its act of mailing benefit cards to her each year—can be found nowhere in either the CBA or the health plan documents." 165 F.3d at 584. The Seventh Circuit thus explicitly based its finding of a major dispute on the fact that neither the CBA *nor the health plan documents* were the central issues in that case. Here, plaintiff acknowledges that interpretation of the "proof of loss" provision contained in the AGAC policy, the equivalent of the health plan documents in *Coker*, is the key issue.

---

**7.** Plaintiff's claims of procedural errors related to this denial are all premised on this underlying assertion. *See, e.g.,* Compl. ¶ 16(c) (alleging failure to provide prompt and reasonable basis for denial), ¶ 16(d) (alleging fail-

ure to properly inform plaintiff how to perfect her claim after denial), ¶ 16(f) (alleging failure to properly and adequately investigate merits of plaintiff's claim), ¶ 16(h) (alleging failure to apply "correct law" to claim).

Accordingly, as in the cases involving pension benefits discussed at length above, the Court finds Pearson's claims relating to whether her claim for LTD benefits was wrongfully denied are "minor disputes," and thus fall under the exclusive jurisdiction of the system board of adjustment. As such, the motion to dismiss plaintiff's claims insofar as they allege a wrongful denial of benefits is GRANTED for lack of subject-matter jurisdiction.

### ii. Failure to Notify Claims

■ It is less clear whether resolving plaintiff's allegations that AGAC and the Plan were required to notify her of her eligibility for benefits is "inextricably intertwined" with the CBA. Neither party addresses this claim in the briefings on this motion. In the complaint, Pearson alleges that AGAC and the Plan failed to notify her of her right to apply for benefits, in violation of "ERISA" and "Code of Federal Regulations § 2560.503–1(e)–(g), inclusive." However, upon reviewing the cited regulations, the Court finds nothing that supports a finding of such an obligation of AGAC or the Plan. Since there appears to be no right at all, the Court cannot conclude that the "source" of such rights is independent from the CBA, and thus these claims are also DISMISSED.

### B. TIMELINESS

As an alternative basis for dismissal, defendants rely on a limitations period contained in the Policy. Since the Court finds it lacks subject-matter jurisdiction over this action, it does not address this issue.

### IV. CONCLUSION

■ Plaintiff requests "the opportunity to amend her complaint should the Court determine that the pleading of her claims is defective to establish jurisdiction in this Court, and the timeliness of her action."

It is unclear how, if at all, plaintiff could amend her complaint to avoid the finding that her claims involve a minor dispute as a matter of law. It is the general factual scenario, not any minor technicality or lack of particularity, that cause this Court not to have jurisdiction.

Since the Court finds exclusive jurisdiction over plaintiff's claims lies with the system board of adjustment, defendants' motion to dismiss is GRANTED. Each party is to bear its own costs and fees.